IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Tony Bryan Smith,<br>    Petitioner, | )<br>)<br>) |
| v. | )   1:15cv191 (JCC/IDD) |
| | ) |
| Harold Clarke,<br>    Respondent. | )<br>)<br>) |

MEMORANDUM OPINION

Tony Bryan Smith, a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction of aggravated malicious wounding and conspiracy to commit first degree murder in the Circuit Court of the City of Virginia Beach. On July 6, 2015, respondent filed a Motion to Dismiss and Rule 5 Answer, along with a supporting brief. Smith was provided the opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7K, and after receiving an extension of time he filed a reply on September 23, 2015. Accordingly, the matter is now ripe for disposition. For the reasons that follow, respondent's Motion to Dismiss will be granted, and the petition will be dismissed, with prejudice. Petitioner's Motion for Judgment, in which he asks that his petition be granted based on the allegedly untimely filing of respondent's Motion to Dismiss, will be denied.

I. Background

On January 13, 2011, following a jury trial, Smith was convicted of aggravated malicious wounding and conspiracy to commit first degree murder. Case Nos. CR09-1079 and CR09-1108. By Order entered May 13, 2011, he was sentenced to serve fifty (50) years in prison. The

1

facts underlying the convictions were described by the Virginia Court of Appeals as follow:

> Detectives Tim Jones, Sean Coerse, and Thomas Shattuck investigated the March 1, 2008 murder of Lattrelle Thornton, who lived in Virginia Beach with appellant's sister, Pamela Campbell. [1] Appellant, a civilian, lived on a military base in Texas (Fort Hood) with his wife, who was in the military.
>
> On December 18, 2008, Shattuck accompanied Jones to Fort Hood to speak with appellant. After arriving at the base, Shattuck and Jones went to appellant's apartment and spoke with him. Shattuck described the visit as friendly, cordial, and consensual. At the end of the interview, appellant allowed the detectives to take a buccal sample of his DNA. Later that day, Shattuck and Jones met with appellant and appellant's mother, who was visiting the base at the time. The second visit was amicable, as well.
>
> After further investigation, Shattuck and Jones returned to the base on January 27, 2009 to arrest appellant. As soon as the detectives arrived at the base, they met with military police officials and explained the results of their investigation and their intent to arrest appellant. Army CID Special Agent Klopfenstein acted as a liaison officer for Shattuck and Jones. Detective Coerse remained in Virginia Beach and obtained an arrest warrant for appellant, a copy of which he immediately faxed to Army officials in Texas. After obtaining the warrant, Klopfenstein devised a 'tactical plan' on how to approach appellant's residence. Shattuck and Jones accompanied Klopfenstein and four military police officers to appellant's residence on the base. Army personnel arrested appellant and transported him to the base's CID building, where Shattuck and Jones interviewed him. After being advised of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), appellant confessed to the crimes. Appellant was then transferred to the custody of Bell County, Texas authorities, where he waived his right to extradition. The detectives transported appellant

---

[1]Testimony at trial indicated that the victim was found suffering from severe head wounds with a baseball bat lying at her feet. Tr. 112, 123. A firefighter EMT who responded to the scene saw no signs of breathing and could not determine if there was a pulse. Tr. 140-41. The victim was transported to a hospital where she was officially pronounced dead. Tr. 164. The medical examiner subsequently documented a two-inch laceration on the victim's central forehead that went down to the bone and was consistent with being struck with a baseball bat. Tr. 741, 747. Her cause of death was determined to be ligature strangulation, with blunt impact to the head as a contributing factor. Tr.756-57.

to Virginia the next day.

Smith v. Commonwealth, R. No. 1287-11-1 (Va. Ct. App. Jan. 26, 2012), slip op. at 2-3.[2] On the appeal, Smith assigned the sole claim that the trial court erred in denying his motion to suppress because "his arrest was unlawful and in violation of his Fourth Amendment right against unreasonable search and seizure." A single judge of the Court of Appeals of Virginia denied the petition for appeal on January 26, 2012, id., and a three-judge panel subsequently concurred in that result on April 12, 2012.

Smith sought further review by the Supreme Court of Virginia, assigning two errors: (1) the trial court erred in denying his motion to suppress because his arrest was unlawful and violated his Fourth Amendment right against unreasonable search and seizure; and (2) the trial court erred in denying his motion to suppress and the Court of Appeals erred in affirming that ruling because the police lacked the authority to arrest him on a military installation. After considering the record and pleadings, the Supreme Court of Virginia dismissed the petition for appeal as to the first assignment of error because it did not properly challenge a ruling by the Court of Appeals, and refused the appeal as to the second assignment of error. Smith v. Commonwealth, R. No. 120774 (Va. Nov. 27, 2012).

Smith thereafter petitioned the Circuit Court for the City of Virginia Beach for a writ of habeas corpus, raising the following claims:

> A. He was denied effective assistance of counsel because his attorney failed to:
>
> 1. (a) Present testimony from witnesses Muldez, Mason

---

[2] Because a federal court on habeas review of a state conviction must defer to findings of fact made by state trial and appellate courts, 28 U.S.C. § 2254(d), it is appropriate to look to the state court's recitation of the salient facts.

3

        and Foley; (b) interview witnesses Rubbo and Pruette and Dr. Ponce and Dr. Gray; (c) consult an expert in communications; (d) challenge the indictment on the ground that it did not match the evidence; (e) prepare petitioner to testify; and (f) present evidence about insurance policies and beneficiaries.

    2.    Argue on appeal that the evidence was insufficient to sustain the malicious wounding conviction because it failed to establish permanent and significant impairment of the victim, since she died;

    3.    (a) Prepare for the preliminary and suppression hearings; (b) prepare for the cross-examination of Jones; (c) challenge petitioner's confession on the ground that the recorder malfunctioned; and (d) challenge the sufficiency of the arrest warrant and the military's authority to arrest him.

    4.    Consult with petitioner about the supplemental motion to suppress; and

    5.    Challenge the arrest warrant.

    6.    The trial court violated his right of confrontation when a witness who was present during the trial was made unavailable and when the court refused to allow the witness to review her prior testimony before she testified.

B.    His right to due process was violated when:

    1.    He was convicted based on evidence that tended to show he was hired to kill the victim, which was evidence of capital murder rather than first degree murder; and

    2.    The Commonwealth failed to preserve evidence after being informed by the police that the recorder malfunctioned.

By Final Order dated January 24, 2014, the trial court dismissed the petition. The Supreme Court of Virginia subsequently found no reversible error in the trial court's decision,

and dismissed petitioner's appeal of that judgment. Smith v. Clarke, R. No. 140509 (Va. Jan. 23, 2015).

Smith next turned to the federal forum and timely filed the instant application for relief pursuant to 28 U.S.C. § 2254. He makes the following claims:

1. He received ineffective assistance of counsel where counsel failed to: (a) investigate the case; (b) present witnesses; (c) challenge the arrest, warrant and indictment; (d) obtain/consult Commonwealth experts Muldez, Foley and Mason who provided the police with evidence of other possible suspects, and the reports were in the discovery; and (e) failed to challenge medical evidence and police practices where the police said the victim was alive but the medical examiner said she was not, and if she was alive he couldn't have committed the crime.

2. Appellate counsel (a) failed to raise properly preserved issues on appeal; (b) raised issues the Court of Appeals could not consider; (c) argued that the arrest was illegal and the police had no authority to arrest petitioner, although the arrest warrant was never addressed at trial and the argument presented the wrong facts; and (d) presented no issue as to the sufficiency of the evidence and the trial court's error in deeming a witness unavailable after she was present for the entire trial.

3. Counsel failed to obtain and present vital information for the preliminary and suppression hearings and the trial. (a) For the preliminary hearing, counsel failed to obtain the alleged handwritten notes that contained a confession. The police provided the defense with a summary that was shown at trial to be inaccurate and incomplete, and counsel could not challenge their testimony. (b) At the suppression hearing, counsel argued that the arrest was illegal and petitioner did not knowingly and intelligently waive his right to counsel.

4. His Sixth Amendment right of confrontation was violated when the court deemed a witness unavailable. Petitioner's mother testified at the preliminary hearing for the Commonwealth. The petitioner was only charged with first degree murder but later was directly indicted for aggravated malicious wounding and conspiracy. His mother was cross-examined by the defense as to the murder charge, but her testimony was attributed to the new charges and the defense was not allowed to cross-examine her again even though she was available.

5. The police knowingly used a defective warrant to arrest and gain access to him, and the arresting agency allowed the police to question him in violation of his rights to due process and to be free from unreasonable search and seizure. In addition, he was unlawfully arrested by Virginia police officers on a military installation.

6. He was deprived of his right to due process when the Commonwealth withheld the handwritten notes of his alleged confession and allowed inaccurate information pertaining to the confession to be presented to the Court, even though they knew it was false.

As noted above, respondent has filed a Rule 5 Answer and a Motion to Dismiss the petition, along with the notice required by Roseboro, 528 F.2d at 309, and petitioner has filed a reply. Accordingly, this matter is now ripe for review.

## II. Exhaustion and Procedural Default

Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court. 28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129 (1987); Rose v. Lundy, 455 U.S. 509 (1982). To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, a petitioner convicted in Virginia first must have presented the same factual and legal claims raised in his federal habeas corpus application to the Supreme Court of Virginia on direct appeal or in a state habeas corpus petition. See Duncan v. Henry, 513 U.S. 364 (1995).

However, "[a] claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker v. Corcoran, 220 F.3d 276,

288 (4th Cir. 2000) (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)). Importantly, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas review of the defaulted claim." Id. (quoting Gray, 518 U.S. at 162). Here, portions of some of petitioner's claims remain unexhausted but are now incapable of exhaustion, as will be noted below. Therefore, those arguments are simultaneously exhausted and defaulted for purposes of federal habeas review. See Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990).

In addition, a state court's finding of procedural default is entitled to a presumption of correctness on federal habeas corpus review, Clanton v. Muncy, 845 F.2d 1238, 1241 (4th Cir. 1988) (citing 28 U.S.C. § 2254(d)), provided two foundational requirements are met. Harris v. Reed, 489 U.S. 255, 262-63 (1989). First, the state court must have relied explicitly on the procedural ground to deny petitioner relief. Id. Second, the state procedural rule relied on to default petitioner's claim must be an independent and adequate state ground for denying relief. Id. at 260; Ford v. Georgia, 498 U.S. 411, 423-24 (1991). When these two requirements have been met, federal courts may not review the barred claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris, 489 U.S. at 260. Based upon these principles, petitioner's Claims 4, 5 and 6 are procedurally barred from federal review.

**Claim 4**: In his fourth claim, petitioner asserts that his Sixth Amendment right to confrontation was violated when the court deemed a witness unavailable. Specifically, petitioner's mother, Sallie Robinson, testified at the preliminary hearing for the Commonwealth. The petitioner at that time was charged with first degree murder, but later was directly indicted for aggravated malicious wounding and conspiracy. Petitioner argues that his right to

confrontation was abridged because his mother was cross-examined by the defense as to the murder charge, but her testimony was attributed to the new charges and the defense was not allowed to cross-examine her again although she was available.

When petitioner made this same argument in claim A(6) of his state habeas corpus application, the trial court held that the claim was "procedurally defaulted under the rule in Slayton v. Parrigan, 215 Va. 27, 29, 205 S.E. 2d 680, 682 (1974), and the Court dismisses the claim[] for that reason." Case No. CL13-3158, Final Order at 3. The Supreme Court of Virginia subsequently affirmed that result without comment. Smith v. Clarke, R. No. 140509. Because the habeas trial court's order was the last reasoned state court decision on the claim, its reasoning is imputed to the Supreme Court of Virginia. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In Slayton, the Supreme Court of Virginia held that a non-jurisdictional issue that could have been but was not raised at trial and on direct appeal is not cognizable in a petition for a writ of habeas corpus. The Fourth Circuit has consistently held that "the procedural default rule set forth in Slayton constitutes an adequate and independent state law ground for decision." Mu'min v. Pruett, 125 F.3d 192, 196-97 (4th Cir. 1997). Therefore, the express finding by the Virginia Supreme Court that Slayton barred review of Claim 4 also precludes federal review of that claim. Clanton, 845 F.2d at 1241.

**Claim 5**: In his fifth claim, petitioner argues in part that the police knowingly used a defective warrant to arrest him and thereby to gain access to him, and that the arresting agency thereafter allowed the police to question him in violation of rights under the Fourth, Fifth and Fourteenth amendments. When petitioner challenged the validity of the warrant on direct appeal, the Court of Appeals of Virginia found that petitioner "never challenged in the trial court the

8

validity of the faxed arrest warrant on the basis it was not signed pursuant to Code §§ 19.2-71 and 19.2-72. Accordingly, Rule 5A:18 bars our consideration of this issue on appeal." Smith v. Commonwealth, R. No. 1287-11-1, slip op. at 3. Because the Virginia Court of Appeals explicitly relied on a procedural ground to deny petitioner relief and furnished an independent and adequate state ground to default petitioner's claim of an invalid warrant, the argument likewise is barred here. Clanton, 845 F.2d at 1241.[3]

Petitioner also argues in Claim 5 that his Fourteenth Amendment right to due process was violated when he was arrested by civilian authorities on a military installation. Pet., "Ground 5 - Additional Facts and Laws in Support." So stated, the claim is simultaneously exhausted and procedurally barred. While it is true that petitioner challenged the lawfulness of the circumstances of his arrest on direct appeal, he did not argue there that the manner of his arrest violated his federal constitutional rights; rather, he contended only that the police lacked the authority to arrest him because military police had exclusive and not concurrent jurisdiction to execute a warrant on a military base. Since the constitutional implications of the claim petitioner makes her were not raised in the state forum, his current claim of a constitutional violation has not been exhausted. Duncan, 513 U.S. at 364. As that claim is now incapable of exhaustion, it is defaulted for purposes of federal habeas review. Bassette, 915 F.2d at 932. And, since the claim that was exhausted in the state forum raised no issues of federal constitutional dimension, it is not cognizable in this § 2254 proceeding. See Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998) (a federal writ of habeas corpus may issue only where a prisoner is in custody in violation

---

[3]Petitioner revisited the issue of the warrant's validity in his state habeas corpus proceeding, where he asserted that counsel provided ineffective assistance for failing to challenge it. As will be discussed in greater detail in connection with Claim 3 infra, the habeas trial court found that had the issue been litigated, the Commonwealth would have produced a signed warrant. Thus, even if Claim 5 were cognizable on the merits, it appears clear that it would entitle petitioner to no relief.

9

of the Constitution or laws or treaties of the United States); Lawrence v. Branker, 517 F.3d 700, 717 (4th Cir. 2008) (allegations that a state court incorrectly applied state law fail to state a basis for federal habeas corpus relief).

**Claim 6**: In his sixth claim, petitioner contends that his right to due process was violated when the Commonwealth withheld handwritten notes of his alleged confession and knowingly allowed inaccurate information pertaining to the confession to be presented. Petitioner made this same argument in claim (B)(2) of his state habeas application. In that proceeding, the claim was determined by the trial court to be "procedurally defaulted under the rule in Slayton," and the court "dismissed the claim[] for that reason." Case No. CL13-3158, Final Order at 3. The Supreme Court of Virginia affirmed that result without comment. Smith v. Clarke, R. No. 140509. This express finding that Slayton barred review of Claim 6 also precludes its federal review. Clanton, 845 F.2d at 1241.

**Cause and prejudice**: A federal court may not review a procedurally barred claim absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris, 489 U.S. at 260. The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See Coleman v Thompson, 501 U.S. 722, 753-54 (1991), 501 U.S. at 753-54; Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990); Clanton, 845 F.2d at 1241-42. Importantly, a court need not consider the issue of prejudice in the absence of cause. Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996).

In his Response to the Motion to Dismiss, petitioner asserts in conclusory fashion that the procedural default of his barred claims was caused by appellate counsel's failure to raise the

issues on direct appeal. Dkt. 29 at 35-36. However, under circumstances like those at bar, a claim of ineffective representation that has not itself been presented to and successfully exhausted in the state courts cannot serve as cause for the procedural default of additional claims. See Murray v. Carrier, 477 U.S. 478, 488-89 (1986); Justus v. Murray, 897 F.2d 709 (4th Cir. 1990).[4] As petitioner neither suggests nor offers evidence sufficient to establish that he is actually innocent of the offenses for which he was convicted, see Schlup v. Delo, 513 U.S. 298, 327 (1995); Royal v. Taylor, 188 F.3d 239, 244 (4th Cir. 1999), claims 4, 5 and 6 of this petition are procedurally barred from federal consideration on the merits.

### III. Merits Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on the claim unless the state court's adjudication is contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Whether a state court decision is "contrary to" or "an unreasonable application of" federal law requires an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the

---

[4]The "narrow exception" to the general rule of Coleman that was created by Martinez v. Ryan, ___ U.S. ___, 132 S.Ct. 1309 (2012) does not apply here, because the defaulted claims do not allege ineffective assistance of trial counsel. Fowler v. Joyner, 753 F.3d 446 (4th Cir. 2014).

11

facts of the prisoner's case." Id. Importantly, this standard of reasonableness is an objective one. Id. at 410. Under this standard, "[t]he focus of federal court review is now on the state court decision that previously addressed the claims rather than the petitioner's free-standing claims themselves." McLee v. Angelone, 967 F.Supp. 152, 156 (E.D. Va. 1997), appeal dismissed, 139 F.3d 891 (4th Cir. 1998) (table).

## IV. Analysis

**Claim 1**: In his first claim, petitioner asserts that he received ineffective assistance of counsel where counsel failed to: (a) investigate the case; (b) present witnesses; (c) challenge the arrest, warrant and indictment; (d) obtain/consult Commonwealth experts Muldez, Foley and Mason who provided the police with evidence of other possible suspects, and the reports were in the discovery; and (e) challenge medical evidence and police practices where the police said the victim was alive but the medical examiner said she was not, and if she was alive he couldn't have committed the crime of malicious wounding. Pet. at 6. All of the components of this claim were exhausted in the state habeas corpus proceeding.[5]

To establish ineffective assistance of counsel, a petitioner must show that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defendant." Strickland v. Washington, 466 U.S. 668, 687 (1984). To prove that counsel's performance was deficient, a petitioner must show that "counsel's representation fell below an objective standard

---

[5]Respondent considers this claim only partially exhausted. See Resp. Brief at 9. Where there is doubt that a claim has been properly exhausted - particularly in an instance like this one, where the pro se petitioner's arguments at all levels of review were expressed in a somewhat disorganized fashion - the court will exercise the discretion provided by 28 U.S.C. § 2254(b)(2) to deny on the merits a habeas corpus claim even if the applicant failed to fully exhaust available state court remedies. See Swisher v. True, 325 F.3d 225, 232-33 (4th Cir.), cert. denied, 539 U.S. 971 (2003) (affirming district court's discretionary decision to elect to deny habeas corpus relief on the merits pursuant to § 2254(b)(2), although claim was "clearly unexhausted").

of reasonableness" id. at 688, and that the "acts and omissions" of counsel were, in light of all the circumstances, "outside the range of professionally competent assistance." Id. at 690. Such a determination "must be highly deferential," with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also, Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis"); Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994) (court must "presume that challenged acts are likely the result of sound trial strategy.").

To satisfy Strickland's prejudice prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; accord, Lovitt v. True, 403 F.3d 171, 181 (4th Cir. 2005). The burden is on the petitioner to establish not merely that counsel's errors created the possibility of prejudice, but rather "that they worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimension." Murray v. Carrier, 477 U.S. 478, 494 (1986) (citations omitted, emphasis original). The two prongs of the Strickland test are "separate and distinct elements of an ineffective assistance claim," and a successful petition "must show both deficient performance and prejudice." Spencer, 18 F.3d at 233. Therefore, a court need not review the reasonableness of counsel's performance if a petitioner fails to show prejudice. Quesinberry v. Taylore, 162 F.3d 273, 278 (4th Cir. 1998).

When petitioner raised his first claim in his state habeas corpus application, the trial court rejected it on the following holding:

> Petitioner's claim (A)(1) fails to demonstrate either deficient performance of counsel or prejudice. With respect to each of the

13

> witnesses identified, whether petitioner asserts counsel failed to call the witnesses or failed to interview them, petitioner fails to proffer anything these witnesses might have offered that would have had a reasonable probability of changing the outcome of his trial. The selection of witnesses and the scope of an investigation are matters that, within reason, are left to the tactical judgment of counsel, and nothing in the petition demonstrates counsel's failure to treat these potential witnesses differently amounted to incompetence under prevailing professional norms. Counsel, furthermore, reasonably could exercise his own judgment about whether he needed an expert to assist him in reading an expert's report and petitioner does not allege his counsel failed to understand the report.
>
> Petitioner fails to explain in claim (A)(1) how the proof at trial did not match the indictment, but to the extent that his complaint is that presented in claim (B)(1), the presentation of evidence that petitioner was hired to kill the victim would have demonstrated premeditation and motive, was admissible, and created no fatal variance such that an attorney would have been obliged to raise some objection. This fails to demonstrate deficient performance or prejudice. Petitioner's claim that his attorney did not prepare him to testify must fail because petitioner elected not to testify. Petitioner's complaint that his attorney failed to present evidence about insurance policies is unaccompanied by any proffer of what the evidence would have been, and in any event, that evidence would only have been relevant to the motives of petitioner's co-conspirator, who hired him to kill the victim. Petitioner does not demonstrate deficient performance of his experienced counsel with respect to any part of claim (A)(1), nor does he demonstrate any reasonable likelihood of a different outcome of his trial. Accordingly, the Court will dismiss claim (A)(1).

Case No. CL13-3158, Final Order at 1- 2.

The foregoing determination is in accord with applicable federal principles. It is well settled in federal jurisprudence that "'strategic choices made [by counsel] after thorough investigation ... are virtually unchallengeable....'" Gray v. Branker, 529 F.3d 220, 229 (4th Cir.), cert. denied, 129 S. Ct. 1579 (2009), quoting Strickland, 446 U.S. at 690-91. In particular, decisions concerning the calling of witnesses are matters of strategy left to the attorney, and ordinarily cannot constitute ineffective assistance. Jones v. North Carolina, 547 F.2d 808 (4th

14

Cir. 1977). In addition, it is well settled in federal law that "an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced." Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996); see also, Goins v. Warden, Perry Corr. Inst., 576 F. App'x 167, 173 (4th Cir. June 18, 2014). As to petitioner's contention that his attorney rendered ineffective assistance by failing to argue that petitioner could not be found guilty of aggravated malicious wounding because his victim died, Virginia law holds that malicious wounding and murder are separate offenses, and a prosecutor has discretion in selecting which to charge. See Coleman v. Commonwealth, 539 S.E.2d 732 (Va. 2001) (holding that attempted murder and malicious wounding are separate offenses for double jeopardy purposes). Thus, the argument petitioner suggests here would have been futile, and it is well established in federal law that an attorney has no duty to make meritless arguments or objections. Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005) (citing Murray v. Maggio, 736 F. 2d 279, 283 (5th Cir. 1984). Under these circumstances, the Virginia courts' rejection of petitioner's first claim was both factually reasonable and in accord with controlling federal principles, and the same result is compelled here. Williams, 529 U.S. at 412-13.[6]

**Claim 2**: In his second claim, petitioner contends that appellate counsel (a) failed to raise properly preserved issues on appeal; (b) raised issues the Court of Appeals could not consider; (c) argued that the arrest was illegal and the police had no authority to arrest petitioner, although the arrest warrant was never addressed at trial and the argument presented the wrong facts; and (d) presented no issue as to the sufficiency of the evidence and the trial court's error in deeming a

---

[6]To the extent that arguments other than those that were rejected by the Virginia Supreme Court in the state habeas proceeding might be gleaned from petitioner's present assertions, see Pet. at unnumbered pp. 18-29, "Ground 1 - Additional facts and laws in support"- such arguments are now incapable of exhaustion, and thus are simultaneously exhausted and defaulted for purposes of federal habeas review. Bassette, 915 F.2d at 932.

witness unavailable after she was present for the entire trial. The state courts on habeas review rejected these arguments, as follow:

> Petitioner alleges in claim (A)(2) that his attorney did not challenge on appeal the sufficiency of the evidence to prove aggravated malicious wounding. The record of petitioner's trial demonstrates a bone-deep laceration that would have left a scar had the victim survived. This evidence was credible and sufficient that a reasonable attorney could determine such an appellate claim would have little chance of success. [B]ecause the claims to be raised on appeal are a tactical matter for counsel, this claim is dismissed. Jones v. Barnes, 463 U.S. 745 (1983).

Case No. CL13-3158, Final Order at 2.

The foregoing determination is in accord with applicable federal principles. The Strickland analysis applies to claims of ineffective assistance on appeal as well as at trial. Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987). Because "appellate counsel is given wide latitude to develop a strategy that may omit meritorious claims in order to avoid burying issues in a legal jungle," Lovitt v. Angelone, 208 F.3d 172, 189 (2000), appellate counsel is not required to assert every conceivable claim on appeal, and counsel's choice of which appellate issues to pursue is virtually unassailable. Jones, 463 U.S. at 751-52. In addition, petitioner has failed to provide any discussion of why he believes he would have prevailed had appellate counsel followed the course he now suggests. Since a petitioner to prevail on a claim of ineffective appellate assistance must demonstrate that counsel ignored stronger appellate issues than those he or she chose to present, see Lawrence v. Branker, 517 F.3d 700 (4th Cir. 2008), petitioner's allegations of ineffective assistance on appeal are without merit, and their dismissal by the Virginia courts will not be disturbed. Williams, 529 U.S. at 412-13.

**Claim 3**: In his third claim, petitioner contends that counsel failed to obtain and present vital information for the preliminary and suppression hearings and the trial. At the preliminary

hearing, counsel allegedly failed to obtain the handwritten notes of petitioner's confession, and allowed the court to rely instead on an inaccurate and incomplete summary provided by the police. As to the suppression hearing, "counsel argued the arrest was illegal and that the petitioner did not knowingly and intelligently waive his right to counsel." Pet. at 9.

When petitioner made these arguments in his state habeas corpus action, they were determined to be meritless for the following reasons:

> Petitioner's claims (A)(3), (A)(4) and (A)(5) allege in summary fashion that his attorney was ill-prepared for his preliminary hearing and suppression hearing. Petitioner has failed to identify any specific errors by his attorney in these proceedings, save his claim that the attorney did not challenge the arrest warrant. The record of this case reflects vigorous litigation of issues related to petitioner's arrest in Texas and the Court finds counsel's performance was not deficient and petitioner was not prejudiced. The issue of the arrest warrant was raised on appeal and found defaulted, but the Commonwealth's brief in opposition at page 7 contains an unchallenged avowal by the prosecutor that had the issue been litigated, the Commonwealth would have produced the signed warrant. Petitioner did not file a reply disputing this assertion. Accordingly, petitioner cannot demonstrate counsel's performance [was] deficient or that he suffered prejudice, particularly where a defect in the warrant would merely have delayed his return to Virginia and would not have prevented his prosecution and conviction. The Court denies relief on claims (A)(3), (A)(4) and (A)(5) pursuant to Strickland, 466 U.S. 668.

Case No. CL13-3158, Final Order at 3.

The state court's foregoing holding was factually reasonable. As to petitioner's allegations that counsel rendered ineffective assistance by allowing the court and jury to rely on an inaccurate summary of his confession, petitioner fails here as he did at the state level to specify the manner in which the summary of his statement that was disclosed to the defense was "inaccurate and incomplete." The record reveals that the summary was produced after it became apparent that the recording device used to record Petitiotner's custodial interview malfunctioned

17

27 minutes into the interview. At that time Detective Jones recorded handwritten notes into his dictaphone, and when he returned to Virginia he loaded the recorded notes into his computer and destroyed his handwritten notes, which he testified was standard operating procedure. Tr.493. Similarly, Investigator Shattuck testified that he "jotted down maybe two lines during the interrogation" and that he also discarded those notes after typing them into his case file. Tr. 324. As respondent argues, it is clear that the officers initially expected to be able to rely on the tape recording of petitioner's confession, and that they prepared the written summary of petitioner's interrogation after they realized that the recorder had malfunctioned and that a full transcript of the interview would not be available. Tr. 318-19, 324. Aside from generalized and unsupported assertions that the summary was inaccurate, petitioner has made no showing of any specific manner in which the summary was inconsistent with the officers' notes or the events hat actually transpired during his interrogation. Without such a showing, the state courts' determination that counsel did not cause petitotner to suffer prejudice by failing to seek out the destroyed notes or by failing to challenge the accuracy of the summary was factually reasonable, and its rejection of the claim was in accord with Strickland.

 Petitioner's assertion that counsel argued at the suppression hearing that petitioner was unlawfully arrested and did not knowingly and intelligently waive his right to counsel patently states no claim of ineffective assistance.

 For these reasons, the Virginia courts' dismissal of this claim was factually reasonable and in accord with applicable federal authorities, and the same result must obtain here. Williams, 529 U.S. at 412-13.

## V. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss this petition will be granted, and the petition will be dismissed with prejudice. Petitioner's Motion for Judgment will be denied. An appropriate Order and judgment shall issue.

Entered this 10th day of March 2016.

Alexandria, Virginia

/s/
James C. Cacheris
United States District Judge

19